

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

**PETER C. McKITTRICK**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE
LAW CLERK

BETHANY COLEMAN-FIRE
LAW CLERK

TONIA McCOMBS
LAW CLERK

August 7, 2017

Beverlyann Lee
3457 NE Couch St.
Portland, OR  97232

Mike Scott (via ECF)
McCarthy & Holthus LLP
920 SW 3rd Ave., 1st Floor
Portland, OR 97204

      Re:    Lee v. Nationstar Mortgage, LLC, Adv. No. 16-3156-pcm
             Ruling on Motions for Summary Judgment

Dear Ms. Lee and Mr. Scott:

      The purpose of this letter is to rule on the motions for summary judgment filed by plaintiff Beverlyann Lee (Debtor) and defendant Nationstar Mortgage, LLC, d/b/a Champion Mortgage Co. (Nationstar) in the above-referenced case and adversary proceeding.  For the reasons explained below, I will deny Debtor's motion for summary judgment and grant in part Nationstar's cross-motion for summary judgment.

Facts[1]

      In March of 2009, Debtor entered into a reverse mortgage transaction with Bank of America.  Complaint, p. 2, lines 1-4.  The subject of the reverse mortgage transaction is Debtor's residence (the Property).  Plaintiff's Concise Statement of Facts, ¶ 2.  Nationstar is the current owner and servicer of the mortgage.  Complaint, p. 2, lines 12-16.  Plaintiff's Concise Statement of Facts, ¶ 2.

---

    [1]    These facts are taken from the parties' concise statements of fact filed in connection with their motions for summary judgment and from documents filed in the main bankruptcy case and this adversary proceeding.  The parties agreed at a hearing held on April 25, 2017, that the Court could consider documents filed in the main case and adversary proceeding in deciding these motions for summary judgment.

Three documents comprise the reverse mortgage transaction: (1) An Adjustable Rate Home Equity Conversion Line of Credit Deed of Trust (the DOT); (2) An Adjustable-Rate Note Home Equity Conversion (the Note); and (3) A Home Equity Conversion Loan Agreement (the Loan Agreement)(referred to collectively as the Loan Documents). Although Debtor objects to consideration of the Loan Agreement in connection with her motion and Nationstar's cross-motion for summary judgment, which objection I will address below, she admits in her complaint and in her memorandum in support of summary judgment that she signed a loan agreement when she entered into the reverse mortgage transaction. See Complaint, p. 18, lines 6-8; Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, page 2, lines 12-22.

Nationstar paid $39,669.77 in real property taxes assessed against the Property for tax years 2010-2015. Plaintiff's Concise Statement of Facts, ¶ 3. Later, from August 2011 to January of 2015, Debtor made payments to Nationstar towards the property tax advances in the total amount of $8,581.55. Defendant's Response to Plaintiff's Concise Statement of Facts, ¶ B.4.[2]

In March of 2016, Nationstar issued a Notice of Default and Election to Sell (the Notice). Complaint, Exhibit 5. The Notice recites that Debtor is in default for failing to maintain insurance and/or provide proof of insurance and failing to pay property taxes prior to the delinquency date. Id. A foreclosure sale was scheduled for August 1, 2016. Id.

Debtor filed a *pro se* chapter 13 petition on July 18, 2016. According to Debtor's Schedule D, Nationstar has an unliquidated $535,000 claim secured by the Property. Debtor does not schedule Nationstar's claim as disputed.

On October 6, 2016, the court entered an order confirming Debtor's chapter 13 plan dated September 20, 2016 (the Plan). Doc. No. 27. The Plan provides that Debtor will cure a

---

[2] Nationstar's Concise Statement of Facts states as follows at ¶ B.4:

"Plaintiff and Defendant do not dispute that Plaintiff made payments towards the property charge advances, in the previously agreed-upon amount of $8,653.55. See Complaint, page 8, line 11 through page 9, line 6; and Answer, paragraph 25, page 5. However, the amount actually paid by Plaintiff was $8,581.55 as disclosed in the Form 410A filed with Defendant's Claim 5, of which Defendant requests the Court take judicial notice. See Form 410A to Claim 5, page 1-3 of 16. The difference of $72 is because the payments listed in Plaintiff's Complaint for 12/19/2011, 1/20/2012, 2/22/2012, and 3/26/2012 are erroneously listed in the amount of $297.71, rather than $279.71 as listed in the 410A. See Complaint, page 8, line 11 through page 9, line 6, and compare to Form 410A, page 1-3."

Debtor did not respond to Nationstar's statement of additional facts filed in connection with its cross-motion for summary judgment. Therefore, the facts asserted by Nationstar are deemed admitted by Debtor. See Fed. R. Civ. P. 56(e)(2); LBR 7056-1(f). Debtor has not disputed that the $8,581.55 sum stated by Nationstar in its statement of additional facts is the accurate number.

$31,500 prepetition arrearage to Nationstar at 0% interest over 60 months.[3] Doc. No. 24. The form language of the Plan also provides, however, that the arrearage amount listed in the Plan "is an estimate; the creditor's timely filed and allowed claim shall control." Plan, § 2(b)(1).

On November 14, 2016, Nationstar timely filed a secured proof of claim in the amount of $542,140.81. See Claim No. 5. The proof of claim lists a prepetition default amount of $31,417.22. Id. The $31,417.22 is comprised of tax advances ($39,669.77) plus the net amount of the cost of a forced place insurance policy ($329) minus Debtor's prepetition payments ($8,581.55), which equals $31,417.22.[4]

On December 28, 2016, Debtor filed an adversary complaint (the Complaint) against Nationstar, raising issues with its proof of claim and asserting various affirmative claims. See Adv. P. No. 16-3156, Doc. No. 1. Shortly thereafter, Debtor filed an objection to Nationstar's claim, which she later amended. See Doc. Nos. 31 and 40, respectively. Debtor objects that Nationstar's claim should be disallowed in full because its proof of claim does not include the required documentation, the arrearage amount is incorrect and should be zero, and:

> "Proof of Claim includes charges not allowed and appraisal, used to qualify debtor's/landlord's property for any Housing and Urban Development (HUD) foreclosure avoidance program was purposely undervalued to ensure HUD approval for mitigation would not be possible, and Claimant's improper accounting would not be discovered."

Doc. No. 40. The Court has consolidated Debtor's claim objection, which is a contested matter, with the adversary proceeding.

Debtor and Nationstar both seek summary judgment on Nationstar's claim and on the affirmative claims asserted by Debtor against Nationstar in the Complaint.

Summary Judgment Standard

With a certain limitation not implicated here, Fed. R. Civ. P. 56 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7056 and to contested matters like Debtor's objection to Nationstar's claim, by Fed. R. Bankr. P. 9014(c). Fed. R. Civ. P. 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A court may grant summary judgment on a claim or defense or "part of each claim or defense." Fed. R. Civ. P. 56(a).

---

[3] Debtor's plan also provides that she will make regular postpetition payments directly to Nationstar. Because Nationstar's claim arises from a reverse mortgage, that provision appears to be meaningless.

[4] Paragraph 27 of the DOT allows Nationstar to purchase insurance at Debtor's expense and add it to the loan balance if Debtor does not provide evidence of insurance coverage. Although Debtor contends that the prepetition arrearage amount should be zero, she does not raise any specific objection to the insurance charge.

I. Consideration of Loan Agreement

As mentioned above, the reverse mortgage transaction is comprised of three documents: the DOT, the Note and the Loan Agreement. "Generally, in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." 17A Am.Jur.2d Contracts § 370 (2016). Debtor argues that I may not consider the Loan Agreement in deciding her motion and Nationstar's cross-motion for summary judgment. Debtor raises two arguments in support of her position, both of which I reject.

    A. Nationstar's Failure to Attach the Loan Agreement to its Proof of Claim

First, Debtor argues that I may not consider the Loan Agreement because Nationstar failed to include that document as an attachment to its proof of claim. Debtor argues that Nationstar is thus "time barred" from any later submission and that the failure to attach the Loan Agreement should result in disallowance in full of Nationstar's claim. Debtor's Memorandum in Support of Motion for Summary Judgment, p. 6. Debtor is mistaken.

With a certain exception not applicable here, FRBP 3001(c)(1) requires that "when a claim . . . is based on a writing, a copy of the writing shall be filed with the proof of claim." Nationstar attached the DOT and Note to its proof of claim but failed to attach the Loan Agreement. That does not mean, however, that it is forever barred from remedying that omission. The Ninth Circuit has "a long established liberal policy" of allowing amendments to timely filed proofs of claim in the absence of undue prejudice to the opposing party. In re Roberts Farms, Inc., 980 F.2d 1248, 1251 (9th Cir. 1992). Amendments to proofs of claim are allowed to, among other things, cure an obvious defect in the proof of claim. 9 Collier on Bankruptcy ¶ 3001.04[1] (16th ed. 2017). In determining whether to allow an amendment, a court should consider whether the opposing party would be unduly prejudiced by the amendment and whether the claimant acted in bad faith or with unreasonable delay. Roberts, 980 F.2d at 1251-52.

Debtor does not affirmatively say, and has not shown, that she would be unduly prejudiced by allowing Nationstar to amend its proof of claim to include the Loan Agreement. As mentioned above, Debtor admits in the Complaint and in her memorandum in support of summary judgment that she signed a loan agreement as part of the reverse mortgage transaction. See Complaint, p. 18, lines 6-8; Debtor's Memorandum of Law in Support of Motion for Summary Judgment, page 2, lines 12-22. Debtor has never stated directly that the Loan Agreement submitted by Nationstar is not the one she signed in 2009, that she was unaware of the terms of the Loan Agreement, or that she did not have her own copy of that document. Indeed, some of the arguments raised by Debtor in her Memorandum in Support of Motion for Summary Judgment, which was filed before Nationstar first filed the Loan Agreement in this matter, suggest that Debtor was familiar with the terms of that document. Debtor's request for full disallowance of Nationstar's claim as a result of its failure to attach the Loan Agreement is grossly disproportionate to the alleged offense: Debtor listed Nationstar as having an undisputed $535,000 claim secured by the Property in her schedule D.

Debtor does complain in her memorandum in reply and response to Nationstar's cross motion that she only had two weeks to inspect the Loan Agreement. Presumably, Debtor is

referring to the fact that Nationstar attached the Loan Agreement to the Declaration of Michael Scott filed on April 14, 2017, in response to Debtor's motion for summary judgment. <u>See</u> Doc. No. 25. I do not find Debtor's argument persuasive for the reasons discussed immediately above. In addition, Nationstar first filed the Loan Agreement in this Court over two weeks earlier than Debtor claims when, on March 30, 2017, it attached the Loan Agreement to its response to Debtor's motion for sanctions, which the court denied in a separate order. <u>See</u> Adv. P. No. 16-3156, Doc. No. 18.

Nationstar's attorney stated in connection with Debtor's motion for sanctions that his failure to attach the Loan Agreement to the proof of claim was a mistake. <u>See</u> <u>Id</u>. As I discuss below, the Loan Agreement supports Nationstar's position that it was entitled to pay the property taxes. Debtor does not explain, and I do not find, any credible evidence of a bad faith basis for Nationstar's failure to attach the Loan Agreement to its proof of claim.

Finally, it is true that Nationstar has not yet formally amended its claim to include the Loan Agreement, but I find its delay in doing so reasonable in this case. As I mentioned immediately above, Nationstar has provided the Loan Agreement to Debtor and the Court. Formally amending its claim before resolution of these potentially dispositive motions for summary judgment would have been a waste of resources and likely would have served only to confuse and hinder efficient resolution of the pending motions for summary judgment.

I will grant summary judgment in favor of Nationstar on the portion of Debtor's claim objection that seeks to disallow Nationstar's claim in full as a result of its failure to attach the Loan Agreement to its proof of claim. The parties have agreed to participate in a settlement conference, which is set for August 28, 2017. <u>See</u> Adv. P. 16-3156, Doc. No. 53. Nationstar shall amend its proof of claim to attach the Loan Agreement within 30 days after the conclusion of the settlement conference.

Nationstar's attorney has stated in court that his client is considering amending its proof of claim to add charges incurred postpetition and to increase the amount of prepetition arrearages stated in its proof of claim. Although I will allow Nationstar to amend its proof of claim to attach the Loan Agreement, I express no opinion on the question of whether and to what extent any other amendments sought by Nationstar will be allowed over Debtor's objection.

B. <u>Debtor's Evidentiary Objection to Consideration of the Loan Agreement</u>

Second, Debtor appears to raise an evidentiary objection to Nationstar's submission of the Loan Agreement in connection with its cross-motion for summary judgment, although the precise nature of that objection is not clear. Debtor's objection is based on her contention that there is "[n]o discernable signature or date for [Nationstar] or it assignor[.]" Debtor's Reply, Doc. No. 31, p. 2. The Loan Agreement recites on its first page that it is "made this 26th day of March 2009[.]" (Emphasis removed). Therefore, it does bear a discernable date and I will not address that contention further. Debtor's complaint about the signature on the Loan Agreement appears to be that she can not identify the person who signed on Bank of America's behalf.

Before turning to a more technical analysis of Debtor's objection, it is important to note that I must evaluate Debtor's evidentiary objection in light of the history of this case and the allegations and admissions made by Debtor in these proceedings. Fed. R. Evid. 102 instructs that

the rules of evidence "should be construed so as to administer every proceeding fairly [and] eliminate unjustifiable expense and delay . . . to the end of ascertaining the truth and securing a just determination."

First, as I discussed above, Nationstar submitted the Loan Agreement in connection with its opposition to Debtor's earlier motion for sanctions. Debtor did not raise any evidentiary objection in connection with that motion or otherwise argue that the Loan Agreement was not genuine or enforceable against her. Second, as I discuss in more detail below, one of Debtor's arguments is that Nationstar's tax advances were improper because they violated a term of the Loan Agreement. Debtor's reliance on the Loan Agreement when she perceives it to be of benefit to her undercuts the validity of her evidentiary objection. Debtor cannot have it both ways. Finally, Debtor alleges in the Complaint that Bank of America obtained a security interest in the Property. Complaint, p. 2, lines 1-5. Debtor also concedes that Nationstar is the current owner and servicer of her reverse mortgage. Plaintiff's Concise Statement of Facts, ¶ 2; Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, page 2, lines 12-15. Debtor does not allege in either her claim objection or the Complaint that the underlying reverse mortgage transaction is invalid or unenforceable against her. Therefore, it is far from clear why Debtor needs to identify the person that signed the Loan Agreement on behalf of Bank of America in the context of the allegations made by her in this proceeding. At the hearing on the motion for summary judgment, Debtor, for the first time, argued that the original loan documents are not enforceable. I am not addressing those issues because the only claims that are properly before this Court are those asserted by Debtor in her claim objection and the Complaint.

To the extent Debtor is raising an evidentiary objection, it appears to be one related to authentication. FRE 901 provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FRE 901(a). FRBP 7056(c)(2) provides that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

> "[I]t is important to note that Civil Rule 56(c)(2) provides that a party 'may object that the material cited to support or dispute a fact *canno*t be presented in a form that would be admissible in evidence,' not that it *is not* so presented. It has been held, properly, that authentication of a document is not required at the summary judgment stage, and that is particularly proper in bankruptcy litigation. A different rule would result in often unnecessary expense for creditors and other stakeholders, and impose requirements inconsistent with efficient bankruptcy administration . . . . But other evidentiary objections (such as those that a document cannot ever be authenticated, or is hearsay, and could not, under any circumstances, be admissible) can provide bases for a court's determination not to consider them under Civil Rule 56(c)(2)."

10 COLLIER ON BANKRUPTCY, ¶ 7056.05 (footnotes omitted)(original emphasis).

The Loan Agreement is attached to the Declaration of Michael S. Scott as Exhibit A. See Adv. P. No. 16-3156, Doc. No. 25. Mr. Scott states in his declaration, "Exhibit A is a copy of the Home Equity Conversion Loan Agreement (the "Loan Agreement") with respect to the subject loan, which was provided to me by Defendant." Id. Thus, it appears that the Loan Agreement has been properly authenticated and is admissible. However, even it if was not, there is no

reasonable basis to conclude that the Loan Agreement could never be authenticated. For the reasons discussed above, I will overrule Debtor's evidentiary objection and consider the Loan Agreement in deciding Debtor's motion and Nationstar's cross-motion for summary judgment.

II. Claim Objection

Debtor raises two substantive objections to Nationstar's claim. First, Debtor argues that the arrearage amount claimed by Nationstar is incorrect because Nationstar's 2010-2015 tax advances were improper. Second, Debtor raises certain accounting issues with respect to the proof of claim filed by Nationstar. For the reasons that follow, I will grant summary judgment in favor of Nationstar with regard to the propriety of all the tax payments. Neither Debtor nor Nationstar have shown they are entitled to summary judgment on the accounting issues raised by Debtor.

    A. Tax Advances

Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor[.]" "A confirmed plan that specifies the amount of an arrearage claim to a mortgage holder precludes postconfirmation objection that the arrearage claim was miscalculated." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 229.1, at ¶ 111, Sec. Rev. Oct. 8, 2010, www.Ch13online.com. Neither Nationstar nor the Chapter 13 trustee argues that Debtor's claim objection is barred by her confirmed plan. In addition, in the cases cited in the Lundin treatise, the creditors filed proofs of claim before plan confirmation. In this case, Nationstar filed its proof of claim after Debtor's plan was confirmed and the form language of Debtor's plan states that the arrearage amount listed is an estimate only and that "the creditor's timely filed and allowed claim shall control." Case No. 16-32793, Doc. No. 22, ¶ 2(b)(1). For all those reasons, I will address the merits of Debtor's claim objection instead of holding that she is bound by the treatment of Nationstar's claim provided for in her confirmed plan.[5]

Nationstar paid $39,669.77 in real property taxes assessed against the Property for tax years 2010-2015. Plaintiff's Concise Statement of Facts, ¶ 3. Debtor raises two arguments in support of her position that Nationstar improperly advanced those funds, both of which I reject.

First, Debtor argues that Nationstar made the tax payments before it was permitted to do so under the Loan Documents. Paragraph 2 of the DOT provides that Debtor shall pay certain property charges, including property taxes, "in a timely manner," unless Nationstar "pays property charges . . . by charging such payments to a line of credit as provided for in the Loan Agreement." Paragraph 5 of the DOT says that if Debtor fails to make the property charges as required by Paragraph 2, "then [Nationstar] may do and pay whatever is necessary to protect the value of the Property and [Nationstar's] rights in the Property, including payment of taxes, hazard insurance and other items mention in Paragraph 2." Under the DOT, any advances made by Nationstar under Paragraph 5 become part of the obligation owed to Nationstar's secured by the

---

[5] As mentioned above, Nationstar's attorney has suggested that his client may amend its proof of claim to increase the amount of prepetition arrears stated therein. I express no opinion on the question of whether Nationstar should be bound by the amount of arrears provided for in its original proof of claim.

Property. DOT, ¶ 26. Article 2 of the Loan Agreement addresses Loan Advances. Section 2.10.5 of the Loan Agreement provides that "[i]f [Debtor] fails to pay the property charges in a timely manner, . . . [Nationstar] shall pay the property charges as a Loan Advance. . . ." A Loan Advance is defined to mean "all funds advanced from or charged to [Debtor's] account under conditions set forth in this Loan Agreement[.]" Loan Agreement, § 1.2.

ORS 311.250(1) provides, with a certain exception not applicable here, that on or before October 25 of each year, the tax collector shall deliver to real property owners "a written statement of property taxes payable on the following November 15." ORS 311.505(1) provides, with a certain exception not applicable here, that "the first one-third of all taxes and other charges due from the taxpayer or property, levied or imposed and charged on the latest tax roll, shall be paid on or before November 15, the second one-third on or before February 15, and the remaining one-third on or before May 15 next following." Subsection (2) of ORS 311.505 requires that interest be charged on property taxes "not paid when due[.]" "Taxes on real property not paid on or before May 15 are delinquent." ORS 311.510.

As shown in Official Form 410A attached to Nationstar's proof of claim, Nationstar made the following tax payments:[6]

| Tax Year | Amount Paid | Date Paid |
|---|---|---|
| 2010 | $2,635.29 | August 17, 2011 |
| 2011 | $4,104.89 | August 28, 2012 |
| 2012 | $7,302.81 | October 15, 2013 |
| 2013 | $8,906.36 | November 13, 2014 |
| 2014 | $8,796.55 | August 3, 2015 |
| 2015 | $7,923.87 | October 26, 2015 |
| Total: | $39,669.77 | |

Debtor did not pay in a timely manner the property taxes for tax years 2010-2014, because Nationstar paid the taxes after May 15 when they were in a delinquent status according to ORS 311.510. It is not even necessary to consider the terms of the Loan Agreement to conclude that Nationstar's payments of the 2010-2014 taxes were proper. Although Nationstar paid the 2015 taxes on October 26 of that year before they were technically due, I will grant summary judgment in favor of Nationstar with regard to that payment as well.

Debtor argues that Nationstar's payment of the 2015 taxes was improper because it made the payment before the November 15 due date. Nationstar argues that it was entitled to pay the 2015 taxes early and secure a discount for doing so because Debtor "established a pattern and

---

[6] Debtor incorporates Nationstar's Form 410A into her concise statement of facts and does not dispute that Nationstar made these payments to Multnomah County. See Debtor's Concise Statement of Facts, ¶ 3.

practice of failing to pay the taxes when due," which caused "an increase in the amount due with interest." AP 16-3156, Doc. No. 25. I agree with Nationstar.

Article 2.15 of the Loan Agreement is captioned Protection of Property. Section 2.15.1 provides that if Debtor "is in default under the Security Instrument, then Lender may make reasonable expenditures to protect and preserve the Property . . . ." The Security Instrument is defined to be the DOT together with the Loan Agreement. Loan Agreement, § 1.12. If a court determines that a contract is unambiguous, it must decide the contract's meaning as a matter of law. O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL, § 14:208 (The Rutter Group 2017). Questions of reasonableness are generally fact questions not susceptible to summary judgment. Id. at § 14:235. However, "reasonableness becomes a question of law appropriate for determination on motion for summary judgment when only one conclusion about the conduct's reasonableness is possible." West v. State Farm Fire & Casualty Co., 868 F.2d 348, 351 (9th Cir. 1988).

The question presented here is whether Nationstar's payment of the 2015 taxes was a reasonable expenditure to protect and preserve its interest in the Property. I will grant summary judgment to Nationstar because I conclude that it was reasonable as a matter of law for Nationstar to pay the 2015 taxes before the November 15 due date and secure a discount for doing so. When Nationstar paid the 2015 taxes, Debtor had not fully and timely paid the property taxes for the previous five years and Nationstar had commenced the foreclosure process, as evidenced by the fact that the Parties completed Oregon's Foreclosure Avoidance Program conference on October 14, 2015. See Complaint, Exhibit 21. Debtor does not contend that she was prepared to pay the taxes, or that if she was, she informed Nationstar of that fact.

Debtor argues that Nationstar was not allowed to pay any of the property taxes until after the State declared a default or imposed a penalty. Debtor concedes that the DOT requires her to pay property taxes "in a timely manner," but her position is that so long as she paid the taxes before the State declared a default or imposed a penalty, they would be paid in a timely manner. Debtor also argues that the property taxes were not due and payable until the time that foreclosure is permitted by ORS 312.010, i.e., three years after the earliest date of delinquency.[7] Debtor cites no contractual, statutory, or other authority that supports her position. Her argument defies any common sense construction of the plain meaning of the Loan Documents and statutes discussed above.

Debtor's second argument is that the tax advances were improper because they exceeded the principal limit permitted under the Loan Agreement. This argument is without merit. The provision upon which Debtor relies, § 2.6.1, governs the circumstances under which Debtor may request a Loan Advance. That provision has no application to the circumstances under which Nationstar may make property tax advances under the circumstances presented in this case.

I will grant summary judgment in favor of Nationstar on the propriety of all the tax payments made by Nationstar from 2010-2015.

---

[7] Under ORS 312.010, real property located in Oregon is subject to foreclosure for delinquent taxes "whenever three years have elapsed from the earliest date of delinquency of taxes levied and charged thereon."

B.  Accounting Issues

The accounting issues raised by Debtor fall into two categories.  First, it appears that Debtor made the $8,581.55 in prepetition payments pursuant to certain repayment agreements between the parties.  Debtor argues that under the repayment agreements, Nationstar was required to, but did not fully, credit her payments to its tax advances so that it would have been impossible for her to ever cure her default.  Debtor argues, and it appears, that Nationstar applied at least some portion of her prepetition payments to Mortgage Insurance Premiums (MIPs).  Second, Debtor argues in her claim objection that Nationstar's claim includes improper charges, including for an appraisal and recurring property inspection charges.[8]  Neither party has demonstrated that they are entitled to summary judgment on the accounting issues raised by Debtor.

With regard to Nationstar's application of Debtor's prepetition payments, there are questions of fact that preclude summary judgment.  The parties did not provide the Court with all of the repayment agreements.  There are two such agreements dated July 31, 2014, and January 26, 2015, in the summary judgment record.  See Complaint, Exhibits 10 and 11, respectively.  However, some of Debtor's payments predate the repayment agreements in the record.  In addition, neither party supplied the Court with any reasoned argument about the interplay between the Loan Documents and the subsequent repayment agreements.   The Loan Documents at least arguably allowed Nationstar to apply prepayments to MIPs but it is not clear, factually or legally, to what extent the parties' repayment agreements modified or supplanted the terms of the Loan Documents.   Nationstar's attorney stated at oral argument that once Debtor's loan went into default as a result of the tax advances, her repayments were separately tracked.  He conceded, however, that the summary judgment record does not include any such records.  Finally, the parties do not address the propriety of the charges challenged by Debtor (appraisal and recurring property inspection charges) in their concise statements of fact and to the extent they do address them in their briefs, they do so only in a conclusory fashion.  For the above stated reasons, I conclude that there are disputed questions of fact and law that preclude summary judgment on the accounting issues raised by Debtor.

III.  Adversary Complaint

Debtor asserts eleven counts in the Complaint for breach of contract and violations of

---

[8]  Debtor also alleges in the Complaint that Nationstar is continuing to charge her account for attorney fees postpetition, allegedly in violation of unidentified court orders.  The Loan Documents appear to allow Nationstar to add postpetition attorney fees.  Paragraph 5 of the DOT provides that if "there is a legal proceeding that may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy . . . ), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property . . . ."  Any amounts paid under Paragraph 5 "shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument."  DOT, ¶ 5.  Moreover, I am not aware of, and Debtor does not identify, any court order preventing Nationstar from adding postpetition attorney fees to her loan balance.

federal[9] and state[10] statutes. Debtor conceded at oral argument that the main contention underlying the claims asserted in the Complaint is that Nationstar improperly paid the 2010-2015 taxes. I have rejected that argument for the reasons discussed above. Therefore, I will grant partial summary judgment in favor of Nationstar to the extent that the claims asserted in the Complaint are dependent on Debtor's contention that Nationstar improperly paid the 2010-2015 taxes. For the reasons stated below, I conclude that neither party has demonstrated that they are entitled to summary judgment with regard to the balance of the claims asserted in the Complaint.

The parties' concise statements of fact do not address at all the affirmative claims asserted in the Complaint. Moreover, although both parties move for summary judgment on all the claims asserted in the Complaint, neither party offers any legal analysis at all of those claims. "A party seeking summary judgment always bears the responsibility of informing the [court] and the opposing party of the specific ground(s) for its motion." O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL, § 14:86 (The Rutter Group 2017). "The moving party must provide whatever arguments and citations to legal authority are required to support the motion." Id. at § 14:93.4. Neither party has even attempted to meet that requirement. Each party's motion for summary judgment on the Complaint is premised on the Court granting summary judgment in full in their favor on the claim objection. I have denied Debtor's motion for summary judgment on her claim objection and granted Nationstar's cross-motion only in part. For all those reasons, I will deny Debtor's motion and Nationstar's cross-motion for summary judgment on the balance of the claims asserted in the Complaint.

Even though I am denying summary judgment on the claims asserted in the Complaint, I have serious concerns about the viability of most, if not all, of those claims. For example, my preliminary research suggests that Debtor's claims under the Fair Debt Collection Practices Act fail as a matter of law. Fed. R. Civ. P. 56(f)(2) provides that a court may grant summary judgment on grounds not raised by a party but only after giving notice and a reasonable time to respond. If the parties do not resolve this matter and it is necessary to set a trial date, I may notify the parties of the nature of my concerns and provide them with an opportunity to respond, with the goal being to narrow as much as possible the scope of the trial, thus minimizing expenses for both parties.

Conclusion:

I will enter summary judgment in favor of Nationstar on Debtor's arguments that (1) Nationstar's claim should be disallowed in full based on its failure to attach the Loan Agreement to its proof of claim, and (2) Nationstar improperly advanced tax payments. I will also enter partial summary judgment in favor of Nationstar to the extent that the claims asserted in the

---

[9] 15 U.S.C. § 1639b(c)(3)(C), 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(4), 15 U.S.C. § 1692e(8), 15 U.S.C. § 1692e(9), 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f(1), and 15 U.S.C. § 1692f(6)(A).

[10] ORS 648.608(1)(k) and ORS 124.110(1)(a).

Beverlyann Lee
Mike Scott
August 7, 2017
Page 12

Complaint are dependent on Debtor's contention that Nationstar improperly paid the 2010-2015 taxes. Both parties' motions for summary judgment will otherwise be denied. The Court will prepare the order.

Sincerely,

PETER C. MCKITTRICK
Bankruptcy Judge

cc: Wayne Godare (via ECF)